IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RACHAEL O. LUCKY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> KIKA SCOTT, *et al.*, <br><br> Defendants. | CIVIL ACTION NO. <br> 1:23-cv-04034-TRJ |

ORDER

This matter is before the Court on Plaintiffs' Opening Brief in Support of Complaint for Declaratory and Injunctive Relief Under the Administrative Procedure Act (Doc. 37) and Defendants' response in opposition (Doc. 39). Upon review and consideration, the Court finds that it lacks subject matter jurisdiction to review the denial of Plaintiffs' I-485 applications, and the denial of the I-130/I-360 petitions was not arbitrary or capricious. Accordingly, Plaintiffs' Complaint is **DISMISSED**.

BACKGROUND

There are four Plaintiffs in this action: Rachael O. Lucky ("Lucky") and her three children Divine N. Lucky, Favour C. Lucky, and Isioma L. Lucky, who are all citizens of Nigeria.[1] (Doc. 22 at 3–4). Lucky entered the United States on a B-2 visa in September 2019. (Doc. 33-1 at 20). After meeting Desmond D. Morgan, Lucky and Morgan married in February 2020 in Cobb County, Georgia. (*Id.*) On October 5, 2020,

---

[1] This Order addresses the denials of Lucky's I-130/I-360 petition and I-485 application because the denial of her children's filings "were a direct result and logical consequence" of the denial of their mother's petition and application. (Doc. 37 at 2 n.2).

Morgan filed a Form I-130 Petition for Alien Relative, requesting permanent, lawful residency for Lucky. (*Id.*) Lucky contemporaneously filed a Form I-485 Application to Register Permanent Residence or Adjust Status. (*Id.* at 13). In the following months, Lucky responded to requests for evidence from U.S. Citizenship and Immigration Services ("USCIS") as to her I-485 application, submitting her birth certificate, tax documents, and an affidavit of support. (Doc. 33-5 at 3–6; Doc. 33-4 at 1–21).

On April 3, 2021, after a year of marriage, Morgan died. (Doc. 33-1 at 20). On December 20, 2021, Lucky's counsel requested that USCIS convert the I-130 petition to a Form I-360 Petition for Amerasian, Widow(er) or Special Immigrant based on Morgan's death. (*Id.*) USCIS converted the I-130 petition to an I-360 petition. (*Id.* at 19). The next day, USCIS interviewed Lucky, and the day after that, USCIS issued its first Notice of Intent to Deny ("NOID") the I-130/I-360 petition. (*Id.* at 20; Doc. 33-9 at 9–11). The NOID explained that Lucky was not eligible for the benefit because USCIS doubted the validity of her marriage to Morgan, specifically on the grounds that she did not provide details on the funeral or attend the funeral, Morgan's death certificate stated he was "never married," and there was limited documentation regarding the marital union. (Doc. 33-9 at 9–11). Two months later, Lucky responded and provided a sworn statement addressing inconsistencies in her testimony and detailing the strained relationship between Morgan's family and herself to explain the "errors" in the death certificate and her absence from the funeral. (*Id.* at 20–23). She also submitted joint bank statements, power bills, and photographs. (Doc. 33-10 at 1–23; Doc. 33-11 at 1–14).

On December 2, 2022, Lucky's I-130/I-360 petition and I-485 application were denied. (Doc. 33-8 at 19–21; *see also* Doc. 33-2 at 6). The denial provided similar reasons as contained in the NOID. (Doc. 33-8 at 19–21). On October 27, 2023, USCIS vacated its denial of Lucky's I-130/I-360 petition and I-485 application and reopened the petition and application. (Doc. 33-2 at 6; Doc. 33-9 at 2). And, on December 15, 2023, USCIS interviewed Lucky for a second time. (Doc. 33-1 at 13). On February 1, 2024, USCIS issued a second NOID regarding the I-130/I-360 petition, requesting more documents from Lucky and Morgan's marriage and stating that Lucky had failed to show the marriage was *bona fide* at its inception, given inconsistencies in her sworn testimony, the discrepancies in Morgan's death certificate, and the questioned authenticity of Lucky's prior divorce documents. (Doc. 33-1 at 20; Doc. 33-6 at 12–17). Lucky responded to the NOID in March 2024 with an amended copy of the death certificate, amended documents regarding her first marriage, a Nigerian court order amending and correcting previously issued divorce documents, and affidavits from Morgan's friends. (Doc. 33-5 at 7–9; Doc. 33-6 at 1–11). USCIS again denied Lucky's I-130/I-360 petition and I-485 application. (Doc. 33-1 at 13–23). USCIS's decision stated that the Nigerian court documents were deficient and unreliable, and USCIS gave no evidentiary value to the amended divorce documents because they were unreliable and contained differences in information that appeared to be an attempt to amend evidence to obtain eligibility. (*Id.*)

3

## LEGAL STANDARD

### A. Subject Matter Jurisdiction under the APA

The Administrative Procedure Act ("APA") generally allows "[a] person who has suffered a legal wrong because of agency action" to seek judicial review. *Kanapuram v. Dir., U.S. Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1306 (11th Cir. 2025) (citing 5 U.S.C. § 702). It is presumed that administrative action is subject to the court's review, "[b]ut this presumption can be overcome by clear and convincing evidence of congressional intent to preclude judicial review." *Id.* (citation modified). "Agency action includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13) (citation modified). "Although the APA independently does not confer subject-matter jurisdiction, 28 U.S.C. § 1331 confers jurisdiction on federal judges to review agency action under federal-question jurisdiction." *Kanapuram*, 131 F.4th at 1306 (quoting *Perez v. U.S. Bureau of Citizenship Immigr. Servs.*, 774 F.3d 960, 964 (11th Cir. 2014)). Importantly, APA review does not apply in two circumstances: (1) when a "statute[] preclude[s] judicial review," or (2) when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

### B. Standard of Review under the APA

"Under the APA, an agency action, finding, or conclusion can be set aside where it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or is 'unsupported by substantial evidence.'" *Mendoza v. Sec'y, Dep't of Homeland Sec.*, 851 F.3d 1348, 1352 (11th Cir. 2017) (citing 5 U.S.C. §§ 706(2)(A), (E)). A court's

review of an agency's action is "exceedingly deferential." *Id.* at 1352–53 (citing *Defs. of Wildlife v. U.S. Dep't of Navy*, 733 F.3d 1106, 1115 (11th Cir. 2013)). In determining whether the agency's actions were arbitrary or capricious, the Court examines "whether the agency came to a rational conclusion and do[es] not substitute [its] own judgment for that of the agency." *Id.*; *see also Brinklys v. Sec'y, Dep't of Homeland Sec.*, 702 F. App'x 856, 860 (11th Cir. 2017). An agency's action is *only* set aside where: "(1) the agency relied on factors which Congress had not intended it to consider, (2) the agency failed to consider an important aspect of the problem, (3) the agency explained its decision in a way that runs counter to the evidence, or (4) the action is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Mendoza*, 851 F.3d at 1353 (citation modified).

## DISCUSSION

An I-130 petition is a petition filed by a U.S. citizen requesting permanent, lawful residency for an immediate relative, such as a spouse. 8 U.S.C. § 1154(a)(1)(A)(i); 8 U.S.C. § 1151(b)(2)(A)(i). USCIS is responsible for investigating the request, determining whether the non-citizen spouse is eligible, and denying or approving the petition. 8 U.S.C. § 1154(b). After the I-130 petition is filed, the non-citizen spouse may then file a contemporaneous application for permanent residence, known as an I-485 application. 8 U.S.C. § 1255(a). A denial of an I-130 petition results in the automatic denial of an I-485 application. *Sharvit v. Noem*, No. 1:24-cv-23987-PCH, 2025 WL 1568255, at *2 (S.D. Fla. Mar. 6, 2025).

"The petitioner bears the burden of proving her eligibility for relief by a

preponderance of the evidence." *Rojas v. Sec'y, Dep't of Homeland Sec.*, 675 F. App'x 950, 953 (11th Cir. 2017) (citing 8 U.S.C. § 1361). "[W]here there is reason to doubt the validity of the marital relationship, the petitioner must present evidence to show that the marriage was not entered into for the purpose of evading the immigration laws." *Id.* (citing *Matter of Laureano*, 19 I. & N. Dec. 1, 3 (BIA 1989)). "USCIS *must* deny an I-130 petition if there is evidence that the parties' current marriage or the non-citizen spouse's previous marriage was entered into to evade immigration laws—this is colloquially referred to as the 'sham marriage' bar." *Sharvit*, 2025 WL 1568255, at *2 (quoting 8 U.S.C. § 1154(c)).

Here, Morgan filed an I-130 (turned I-360)[2] petition on behalf of Lucky (and her children), and Lucky filed a corresponding I-485 application on behalf of herself (and her children), all of which were denied by USCIS. (Doc. 33-1 at 13, 19–23; Doc. 33-2 at 6; Doc. 33-8 at 19–21). Plaintiffs argue that "Defendants' decisions denying the I-130 Petition turned I-360 Petition and consequently, the I-485 applications," were arbitrary and capricious, and the "case hinges on . . . whether [Lucky] provided sufficient evidence to prove, by a preponderance of the evidence, that her marriage to

---

[2] "An I-360 self-petition allows a widow or widower of a U.S. citizen . . . to file for adjustment of status on their own behalf" if the widow was married at the time of death and the petition is filed within two years of the spouse's death. *Williams v. Sec'y, U.S. Dept. of Homeland Sec.*, 741 F.3d 1228, 1230 (11th Cir. 2014) (citing 8 U.S.C. § 1154(a)(1)(A)(i)); 8 U.S.C. § 1151(b)(2)(A)(i)); Department of Homeland Security Appropriations Act, Pub. L. No. 111-83, § 568(c), 123 Stat. 2142, 2186 (2009). "DHS has a regulation that automatically converts an I-130 beneficiary petition to an I-360 self-petition if the U.S. citizen petitioner dies before a final agency decision." *Id.* at 1232 n.2 (citing 8 C.F.R. § 204.2(i)(1)(iv)). After Morgan's death, USCIS converted the petition. (Doc. 33-1 at 19–23).

[Morgan] was *bona fide* at its inception." (Doc. 37 at 2, 11–12). Ultimately, the issue before the Court is two-fold: (1) whether the Court has jurisdiction to review USCIS's denial of the I-130/I-360 petitions, and subsequently the I-485 applications, and (2) if the Court does have such jurisdiction, whether the agency's decision to deny the petitions and applications was arbitrary or capricious.

### A. The Court lacks subject matter jurisdiction to review USCIS's denial of Plaintiffs' I-485 applications.

8 U.S.C. § 1255 "governs USCIS's ability to adjust the residency status of a non-citizen," including the approval or denial of an I-485 application. *Sharvit*, 2025 WL 1568255, at *2; *see also* 8 U.S.C. § 1255(i)(2) ("Upon receipt of such an application and the sum hereby required, the Attorney General may adjust the status of the alien to that of an alien lawfully admitted for permanent residence if . . . the alien is eligible . . . and . . . an immigrant visa is immediately available."). "It is clear that 8 U.S.C. § 1255 numbers amongst the catalogue of those statutorily-provided discretionary powers of the Attorney General insulated from judicial review." *Velasquez v. U.S. Att'y Gen.*, 303 F. App'x 703, 708 (11th Cir. 2008) (quoting *Zafar v. U.S. Att'y Gen.*, 461 F.3d 1357, 1361 (11th Cir. 2006)). Congress left no room for judicial review of the Attorney General's discretion in this area, stating that "no court shall have jurisdiction to review any judgment regarding the granting of relief under section 1255 of this title." 8 U.S.C. § 1252(a)(2)(B)(i) (citation modified). In sum, "USCIS may deny an I-485 pursuant to § 1255, and § 1252 prohibits a court from reviewing any decision made pursuant to § 1255." *Sharvit*, 2025 WL 1568255, at *2 (citation omitted).

Plaintiffs challenge USCIS's denial of their I-485 applications. (Doc. 22 at 2)

7

(requesting the Court to compel corrective action on "four Forms I-485"). But this Court lacks jurisdiction, under both statutory authority and Supreme Court precedent, to review the decision to deny the I-485 applications. *See* 8 U.S.C. § 1252(a)(2)(B)(i); *Patel v. Garland*, 596 U.S. 328, 339–40 (2022) ("[A] noncitizen may not bring a factual challenge to orders denying discretionary relief, including adjustment of status."); *Valesquez*, 303 F. App'x at 708 ("[W]e lack jurisdiction to review the IJ's determination regarding Velasquez's eligibility for status adjustment."); *Kanapuram*, 131 F.4th at 1306–07 (affirming that Congress' grant of discretion "includes . . . the ultimate decision to approve or deny a [I-485 application]," as well as the adjudicative process for the application). Thus, Plaintiffs' request for relief as to the I-485 applications is **DENIED** for lack of jurisdiction.

As for the I-130/I-360 petitions, USCIS also argues that the Court lacks jurisdiction to review USCIS's credibility determinations and the weight it gave to certain evidence leading to its denial of the I-130/I-360 petitions. (Doc. 39 at 14–18) (citing to 8 U.S.C. § 1154(a)(1)(J) ("The determination of what evidence is credible and the weight to be given that evidence shall be within the sole discretion of the Attorney General.")). To the extent Plaintiffs ask this Court to view or weigh the evidence before USCIS differently, this Court is "statutorily precluded" from doing so. *Rojas*, 675 F. App'x at 955; 8 U.S.C. § 1252(A)(2)(B). But, because Plaintiffs also raise arguments that do not relate to the weight or credibility of the evidence, the Court has jurisdiction to review those decisions. *See, e.g., Diaz v. U.S. Citizenship & Immigr. Servs.*, 499 F. App'x 853, 856–57 (11th Cir. 2012) ("[T]he USCIS's denial of

8

Denise's I-130 petition was not arbitrary, capricious, or an abuse of discretion."); *Brinklys*, 702 F. App'x at 862–63 ("[T]he [USCIS] did not act arbitrarily or capriciously in determining that substantial and probative evidence supported the finding that [the petitioners] fraudulently married[,]" which barred the grant of an I-130 petition.).

### B. USCIS's denial of Plaintiffs' I-130/I-360 petitions was not arbitrary or capricious.

The Court can set aside USCIS's decision if it is arbitrary or capricious—in other words, where: "(1) the agency relied on factors which Congress had not intended it to consider, (2) the agency failed to consider an important aspect of the problem, (3) the agency explained its decision in a way that runs counter to the evidence, or (4) the action is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Mendoza*, 851 F.3d at 1353 (citation modified). The Court can also set aside USCIS's decision if it is "unsupported by substantial evidence," which "is no more than a recitation of the application of the arbitrary and capricious standard to factual findings." *Id.* at 1352–53 (citation modified). Neither standard is met in this case.

"[I]n determining whether [a] marriage [is] fraudulent, the relevant inquiry is whether the bride and groom intended to establish a life together at the time they were married." *Mendoza*, 851 F.3d at 1354 (citation modified). USCIS may look to all types of evidence in weighing this decision, such as insurance policies, leases, tax forms, bank account information, evidence of a marriage ceremony, and evidence of shared experiences. *Id.* Lucky argues that she provided sufficient evidence to prove a

9

*bona fide* marriage, and that USCIS's decision was unsupported by the record. (Doc. 37 at 11–13). Lucky also argues that USCIS did not consider all of the evidence in the record, specifically, the evidence provided by the Nigerian court, and erroneously concluded that Lucky had not properly ended her previous marriage. (*Id.* at 14).

Although "USCIS must consider any credible evidence relevant to the petition, . . . the determination of which evidence is more credible, and the weight to be given to that evidence, is committed to the sound discretion of the USCIS." *Rojas*, 675 F. App'x at 953 (first citing 8 U.S.C. § 1154(a)(1)(J); then citing INA § 204(a)(1)(J); and then citing 8 C.F.R. § 204.1(f)(1)). The Court is "statutorily precluded from reweighing the evidence." *Id.* at 955. As explained above, the Court cannot reweigh the evidence, but it can consider whether USCIS's decision considered the evidence and was supported by the evidence. After reviewing the record, the Court finds that USCIS reviewed all of the evidence (including the Nigerian court documents), determined the credibility of the evidence, and concluded that Plaintiffs had not proven, by a preponderance of the evidence, that Lucky's previous marriage was dissolved and that she was able to enter into a new marriage with a U.S. citizen.

USCIS's decision observed that Lucky violated her visa admission by remaining in the United States after her visa expired. (Doc. 33-1 at 20). USCIS also included a thorough and detailed explanation of why the Nigerian court documents and divorce documents, viewed collectively, were deficient. (*Id.*) Specifically, USCIS reasoned that the second version of divorce documents did not match the initial submission of divorce documents, the docket numbers on the two submissions did not

10

match, and the court documents listed different dates for the same petition hearing. (*Id.*) USCIS also explained that the additional court documents conflicted with information that Lucky had previously submitted to the U.S. Consulate, with one document suggesting Lucky and her prior spouse had not been living together for a period of time, and the other document stating that they did reside together at the same address well after the divorce proceedings were initiated (seemingly to mislead the U.S. government in an attempt to obtain a visa). (*Id.* at 22). In the NOID issued in February 2024, USCIS also explained that it had found discrepant information in Morgan's death certificate and a lack of support for the cohabitation of Morgan and Lucky during their marriage. (Doc. 33-6 at 12–17). And to the extent Lucky argues that USCIS did not weigh evidence in her favor, the record belies this argument. USCIS clarified that it took favorable evidence, including affidavits, into consideration in its decision. (*See* Doc. 33-1 at 22). But, in the sole discretion of USCIS, this favorable evidence was insufficient.

Because "substantial and probative evidence supports the determination that" Lucky's prior marriage was not dissolved and that Lucky's qualifying marriage was not *bona fide* for immigration purposes, USCIS's denial of the I-130/I-360 petitions was not arbitrary or capricious. *Brinklys*, 702 F. App'x. at 862–63; (Doc. 33-1 at 19–23). USCIS did not rely on irrelevant factors, fail to consider an important aspect of the problem, explain its decision in a way that runs counter to the evidence, or reach a conclusion that is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Mendoza*, 851 F.3d at 1353 (citation

11

modified). Rather, it was a "rational conclusion connected to the evidence"—and this is all the Court needs to make its decision and uphold USCIS's decision. *Salmeron-Salmeron v. Spivey*, 926 F.3d 1283, 1286 (11th Cir. 2019).

## CONCLUSION

Because the Court lacks jurisdiction to review USCIS's denial of Plaintiffs' I-485 applications, and because USCIS did not act arbitrarily or capriciously in denying the I-130/I-360 petitions, Plaintiffs' Complaint (Doc. 1) is **DISMISSED**. The Clerk is respectfully **DIRECTED** to **CLOSE** this case.

SO ORDERED, this 24th day of October, 2025.

_____
TIFFANY R. JOHNSON
United States District Judge